UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID REYES,<br><br>　　　　　　Petitioner,<br><br>vs.<br><br>M. MARTEL, et al.,<br><br>　　　　　　Respondents. | Civil No.　　08-0791 JLS (PCL)<br><br>**REPORT AND RECOMMENDATION RE MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS** |

**I.　INTRODUCTION**

　　Petitioner David Reyes has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging his conviction for second degree murder and use of a knife in San Diego Superior Court case number SCD 150364. Respondent has filed a motion to dismiss the petition, arguing that it was filed beyond the statute of limitations. (Mem. of P. & A. Supp. Answer.)

　　The Court has considered the Petition, Respondent's Motion to Dismiss and Memorandum of Points and Authorities in Support of the Motion to Dismiss, Petitioner's Response to the Court's Order to Show Cause, the Lodgments submitted by Respondent, and all the supporting documents submitted by the parties. Based upon the documents and evidence presented in this case, and for the reasons set forth below, the Court recommends that the Motion to Dismiss be **GRANTED.**

/ / /

/ / /

1

## II. PROCEDURAL BACKGROUND

Reyes was convicted in 2000 of second degree murder and personal use of a deadly weapon. He appealed his conviction to the California court of appeal. The court upheld the conviction in an unpublished, written opinion filed on March 15, 2002. (Lodgment No. 2.) Reyes then filed a Petition for Review in the California Supreme Court, which denied the petition on June 12, 2002. (Lodgment No. 4.)

Reyes next filed a petition for writ of habeas corpus in the San Diego Superior Court on August 12, 2003.[1] (Lodgment No. 5.) The Superior Court issued a written opinion denying the petition on September 8, 2003. (Lodgment No. 6.) Next, he filed a petition for writ of habeas corpus in the California court of appeal on December 10, 2003. (Lodgment No. 7.) The court denied the petition in a written opinion on December 23, 2003. (Lodgment No. 8.) Finally, he filed a petition for writ of habeas corpus in the California Supreme Court on March 7, 2006. (Lodgment No. 9.) The court denied the petition with a citation to *In re Robbins*, 18 Cal. 4th 770, 780 (1998) on November 15, 2006. (Lodgment No. 10.)

## III. DISCUSSION

Under 28 U.S.C. § 2244(d), a petitioner has one year from the date his or her conviction is final to file a petition for writ of habeas corpus in federal court pursuant to 28 U.S.C. § 2254. *See* 28 U.S.C. § 2244(d). The statute of limitations, however, is subject to both statutory and equitable tolling. *See* 28 U.S.C. § 2244(d)(1); *Calderon v. United States Dist. Court (Beeler)*, 128 F.3d 1283, 1288 (9th Cir. 1997), *overruled on other grounds by Calderon v. United States Dist. Court (Kelly)*, 163 F.3d 530, 540 (9th Cir. 1998). While Reyes is entitled to some statutory tolling, he is not entitled to any equitable tolling. His petition is therefore untimely and the court recommends it be **DISMISSED** with prejudice.

### A. Commencement of the One-Year Statute of Limitations

Reyes' petition for review was denied by the California Supreme Court on June 12, 2002.

---

[1] For purposes of calculating AEDPA's limitation period the "mailbox rule" applies to both the pro se prisoner's federal habeas petition and the state court habeas petition that began the period of tolling. *See Anthony v. Cambra*, 236 F.3d 568, 575 (9th Cir. 2000) (applying *Houston v. Lack*, 487 U.S. 266, 276 (1988), in which the Supreme Court held that a notice of appeal by a pro se prisoner is deemed filed at the moment the prisoner delivers it to prison authorities for forwarding to the clerk of court); *see also Huizar v. Carey*, 273 F.3d 1220 (9th Cir. 2001)(holding that mailbox rule applies even if document is never actually filed as long as prisoner diligently follows up once he has failed to receive a disposition from the court).

2

(Lodgment No. 4.) Thus, including the ninety days within which Reyes' could have pursued his appeal in the United States Supreme Court by filing a petition for writ of certiorari, his conviction became final on September 10, 2002. *See Bowen v. Roe*, 188 F.3d 1157, 1158-59 (9th Cir. 1999). Absent any statutory or equitable tolling, Reyes had until September 10, 2003 to file his federal habeas petition. 28 U.S.C. § 2244(d).

### B.  Statutory Tolling

28 U.S.C. § 2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review . . .is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). Reyes constructively filed his first state habeas petition on August 12, 2003. (Lodgment No. 5; *see Anthony*, 236 F.3d at 575.) The superior court denied the petition on September 8, 2003, a period of twenty-seven days. (Lodgment No. 6.) This extends Reyes' deadline for filing his federal petition until October 7, 2003.

In California, Petitioners are entitled to statutory tolling for the period between the denial of a habeas petition and the filing of a new habeas petition in a higher court so long as the petition is timely. *Evans v. Chavis*, 546 U.S. 189 (2006). Respondent argues that Reyes is not entitled statutory tolling for the eighty-seven days between the denial of his habeas petition by the Superior Court on September 8, 2003 and the filing of his next habeas corpus petition in the California court of appeal on December 4, 2003 because it exceeds the presumptively reasonable sixty days outlined by the Court in *Evans*. (Mem. of P. & A. Supp. Answer at 7.)

It is not entirely clear whether Reyes is entitled to the eighty-seven days of tolling, particularly since the state appellate court did not deny the petition because it was untimely but rather on the merits. (*See* Lodgment No. 8; *Evans*, 546 U.S. at .) The Court need not decide this question, however, because even if the Court credits Reyes with the eighty-seven days between filings plus the sixteen days his petition was pending in the California Court of Appeal, extending the filing deadline for Reyes' federal petition to January 19, 2004, his petition is still not saved by statutory tolling. Reyes waited an additional seven hundred and twelve days, until December 31, 2005, to file his next state habeas petition. During that period, no tolling can be applied because no state habeas petition was "pending" because the delay between filings far exceeds any reasonable interpretation of the timeliness

3

1  requirements of *Evans*. *See Evans*, 546 U.S. at 198-201. Thus, by the time Reyes filed his habeas
2  corpus petition in the California Supreme Court, the statute of limitation for filing his federal habeas
3  petition had run. His federal petition can therefore only be timely if he is eligible for sufficient equitable
4  tolling to make his April 20, 2008 federal habeas petition timely.

   **C.    Equitable tolling**

   "To be entitled to equitable tolling, [Petitioner] must show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Lawrence v. Florida*, 549 U.S. 327, __, 127 S.Ct. 1079, 1085 (2007), quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Equitable tolling is unavailable in most cases, and "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule." *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002). Reyes has submitted voluminous documents to support his claim that he is entitled to equitable tolling for virtually the entire period between March of 2002 and March of 2008. He details a series of prison incidents and transfers for which he was put in Administrative Segregation and purportedly separated from his legal documents. The Court has carefully reviewed the documents submitted by Reyes and finds they do not support a conclusion that Reyes is entitled to equitable tolling.

   On May 8, 2002, Reyes was involved in a prison incident ("prison incident no. 114") which culminated in his being extracted from his cell, pepper sprayed and his legal materials confiscated. (Pet'rs Ex. E.)[2] He was placed in Administrative Segregation ("Ad. Seg."). On June 5, 2002, Reyes was reissued his property. He claimed in a inmate grievance form ("602") filed on June 11, 2002 that his legal papers were not among the reissued property and had been lost. (Pet'rs Ex. F.)[3] He asked to be reimbursed for the cost of recopying all of his legal documents and for prison official to contact the Attorney General's Office to obtain another set of documents. Despite this, however, Reyes was able

---

[2] The documents submitted by Reyes as Exhibits A and B date from before the statute of limitations began running on September 10, 2002 and do not have any bearing upon any equitable tolling to which Reyes may be entitled. Exhibit A is a letter from Reyes' appellate attorney, Barbara Smith, informing Reyes that she is his appointed attorney. Exhibit B contains documents related to a prison incident which occurred on March 28, 2002, of which Reyes was later found not guilty and the charges dismissed. (*See* Pet'rs Ex. B.)

[3] In Exhibit D, Reyes also claims he did not have access to the law library between April 15 and April 19, 2002. (*See* Pet'rs Ex. D.)

to file a petition for review in the California Supreme Court which contained six of the seven claims he has presented in his federal petition. (*See* Lodgment No. 3; Pet. at 6-16.)

Reyes appealed the denial of his 602. After receiving an informal denial of his claim, he filed a first level appeal. (*Id.*) The appeal was denied for two reasons. First, any loss of legal papers, if true, was due to Reyes' own actions in refusing to comply with prison staff's directions. This caused the cell extraction and the pepper spray, which ultimately contaminated any papers that were not returned to Reyes. (*Id.*) Second, a search of Reyes' cell the day the first level appeal was denied resulted in the discovery of "approximately 315 pages of trial transcripts" which Reyes admitted were from his appeal. (*Id.*) Reyes filed a second level appeal and a director's level appeal which were denied for the same reasons on October 22, 2002 and November 25, 2002, respectively. (*Id.*)

A lack of access to legal materials may constitute extraordinary circumstances beyond a prisoner's control sufficient to establish equitable tolling. *Espinoza-Matthews v. California*, 432 F.3d 1021, 1026 (9th Cir. 2005). As to the period of time outlined above, however, the Court concludes Reyes is not entitled to any equitable tolling. To begin with, it is not clear to the Court what, if any, legal documents Reyes lost a result of prison incident no. 114. The documents submitted by Reyes indicate he had three hundred and fifteen pages of trial transcripts during this period. Moreover, even if Reyes did lose access to his legal papers, it was not as a result of "extraordinary circumstances beyond his control." *Id.* at 1026. Rather, whether the papers were lost or contaminated, it was a result of Reyes's refusal to comply with prison staff directions and the consequent use of pepper spray on Reyes and his belongings.

Reyes was again involved in a prison incident on October 25, 2002 which resulted in another placement in Ad. Seg. Charges relating to that incident were dismissed on December 2, 2002. (Pet'rs Ex. E.) He was transferred to California State Prison Lancaster on February 20, 2003 and, after his request, transferred to California State Prison, Solano on April 2, 2003. (Pet'rs Ex. G, O-1.) He was placed in Ad. Seg. in each of these institutions pending his classification. (*Id.*) While at Solano, Reyes was involved in another incident on June 28, 2003, for which he was later found not guilty. (Pet'rs Ex. J.) He filed a petition for writ of habeas in the San Diego Superior Court on August 12, 2003 which raised four of the six claims he is raising in his current federal petition. (Lodgment No. 5; Pet'rs Ex.

5

I.) On December 10, 2003, Reyes was the victim of an attack which resulted in his placement in Ad. Seg. (Pet'rs Ex. J-1.) It is not clear when he was released to the general population.

Reyes makes no specific claims of a lack of access to legal materials during this time period and the documents he has provided to the Court do not support a conclusion that he did not have such access. Furthermore, Reyes was able to file a habeas corpus petition during this time period which included the majority of the claims he currently seeks to raise in his federal petition. (*See* Lodgment No. 5; Pet'rs Ex. I.) Accordingly, Reyes has not established extraordinary circumstances beyond his control sufficient to warrant equitable tolling.[4] *Espinoza-Matthews*, 432 F.3d at 1026-27.

On November 15, 2004, Reyes was transferred again, this time to Mule Creek State Prison. (Pet'rs Ex. O-1.) It appears Reyes was in Ad. Seg. at Solano from at least August 10, 2004 until his transfer. (Pet'rs Ex. K.) Reyes received a rules violation report on December 26, 2004, for possession of methamphetamine. (Petr's Ex. K-1.) A hearing was held on March 19, 2005; Reyes was found guilty, disciplined, and the matter was referred to the District Attorney's Office for prosecution. (K-1.) On May 3, 2005, Reyes was placed in Ad. Seg. on suspicion of conspiracy to commit battery on a fellow inmate. (Pet'rs Ex. L.) Reyes filed an appeal of this placement on May 16, 2005. (*Id.*) He attached to the appeal a list of things he claimed he was missing, one of which was legal materials. (*Id.*). On June 17, 2005, the Amador County District Attorney filed a criminal case charging Reyes with possession of methamphetamine while in prison. (Pet'rs Ex. M-2.) He was transferred to Salinas Valley State Prison August 23, 2005, and from September of 2005 through most of 2007, Reyes was transferred back and forth between Salinas Valley State Prison and Amador County to appear in the criminal case. (Pet'rs Ex. O-1.)

Sometime in mid-December of 2005, Reyes sent letters to the San Diego County District Attorney's Office the California Court of Appeal for the Fourth Appellate District, Division One and the San Diego Superior Court asking for copies of his transcripts and the state appellate filings. (Pet'rs

---

[4] Reyes has also included a series of letters between himself and a prison lawyer, Donald Walker in his exhibits. (*See* Pet'rs Ex. J-2.) Reyes states he first contacted Walker on April 2, 2003 and that Walker told him he would "take care of all [Reyes'] legal issues." (Pet'rs Decl. at 4.) Reyes and Walker conducted a correspondence between June 28, 2003 and March 26, 2007. (Pet'rs Ex. J-2.) Any errors by Walker, however, cannot form the basis for equitable toling because they do not constitute "extraordinary circumstance beyond a prisoner's control." *See Espinoza-Matthews*, 432 F.3d at 1026-27.

6

Ex. N-1.) In his letter, he states that when he arrived at Salinas Valley State Prison on August 23, 2005, prison authorities had lost his legal papers. (*Id.*) On March 6, 2006, he again complained in a 602 that he was missing his legal papers. (Pet'rs Ex. Q.) Nevertheless, Reyes filed a petition for writ of habeas corpus in the California Supreme Court on March 7, 2006 which contains essentially the same claims as he seeks to raise in his current federal petition. (Pet'rs Ex. P-2.) On April 13, 2006 he was transferred to Deuel Vocational Institution ("DVI") and on April 20, 2006, his grievance regarding the loss of legal paperwork was granted. (Pet'rs Ex. O-1, Q.) Reyes's property was sent on the next available bus to DVI. (Pet'rs Ex. Q.)

As to this period of time, the Court concludes that Reyes is not entitled to equitable tolling. Although he has presented some evidence that he was separated from his legal materials from August 23, 2005, until at least late April of 2006, it does not appear to have affected his ability to pursue his state court collateral remedies because he was able to file a habeas corpus petition in the California Supreme Court which raised the same claim as in his current petition. Thus, Reyes has not presented sufficient evidence of extraordinary circumstances beyond his control which prevented him from filing his federal petition in a timely matter. *See Espinoza-Mathews*, 432 F.3d at 1026.

Reyes again complained about his lack of legal papers in a letter to the California Supreme Court on June 18, 2006 and in a 602 on January 18, 2007. (Pet'rs Ex. S, V.) The January 18 grievance, however, appears to concern legal papers relating to his methamphetamine case. (Pet'rs Ex. V.) On July 20, 2007, and September 22, 2007, Reyes filed two more 602s alleging his legal papers were missing, but again this appears to concern legal documents related to his methamphetamine case. (Pet'rs Ex. W, Y.) On March 7, 2008, the methamphetamine case against Reyes was dismissed. (Pet'rs Ex. BB.) The instant federal petition was filed on April 30, 2008. Although Reyes consistently claimed during this period that his legal paperwork was missing, the majority of his complaints concern his legal papers relating to the methamphetamine case. And, as previously noted, the federal petition Reyes has filed in this case does not markedly differ from the petition he filed in the California Supreme Court on March 7, 2006.

Having carefully considered the documents and argument Reyes has presented to support a claim of equitable tolling, the Court concludes that while Reyes may have been deprived of his legal materials

during the relevant time period, he has not satisfied his burden to establish that he was diligently pursuing his rights and that "some extraordinary circumstance stood in his way and prevented him from timely filing" his federal petition. *See Lawrence*, 127 S.Ct. at 1085. Reyes let three hundred and thirty-seven of the three hundred and sixty-five days of the statute of limitations pass before he filed his first state habeas petition. (Pet'rs Ex. I.) He also let seven hundred and twelve days pass between the denial of his habeas petition by the California appellate court and his subsequent filing of a habeas petition in the California Supreme Court. Further, although Reyes alleges he did not have access to his legal papers during much of the time between March of 2002 and March of 2008, that his federal petition does not significantly differ from the state court petitions he did file during that time period belies his claim that the loss of his legal papers had any appreciable effect of his ability to present his claims to this court.

## IV. CONCLUSION AND RECOMMENDATION

The Court submits this Report and Recommendation to United States Chief District Judge Janis L. Sammartino under 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c)(1)(c) of the United States District Court for the Southern District of California. . For the reasons outlined above, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered granting the Motion to Dismiss and dismissing the Petition with prejudice.

**IT IS ORDERED** that no later than **January 28, 2009,** any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

/ /
/ /
/ /
/ /
/ /
/ /
/ /
/ /

8

1   **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and
2   served on all parties no later than **February 18, 2009**.  The parties are advised that failure to file
3   objections within the specified time may waive the right to raise those objections on appeal of the
4   Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d
5   1153, 1156 (9th Cir. 1991).

6   DATED: December 24, 2008

7                                   Peter C. Lewis
8                                   U.S. Magistrate Judge
                                United States District Court

11   cc:  The Honorable Janis L. Sammartino
12         All Counsel of Record

9